# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| DEEP SEA FINANCING, LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * |
| | *   CV 410-219 |
| QBE INSURANCE, LTD., d/b/a | * |
| BRITISH MARINE INSURANCE, CO., | * |
| | * |
| Defendant. | * |

## ORDER

Presently before the Court is Defendant's Motion for Summary Judgment. Dkt. No. 30. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

**FACTUAL BACKGROUND**

This dispute arises from the wreck of the LA CONCHA. The LA CONCHA, a dredge owned by Dragados Mundiales del Caribe S.A. de C.V. ("Dragados"), ran aground on a coral reef on June 5, 2007. The ship was on its way from Puerto Morelos, Mexico to a project in Cancun when the accident occurred. Understandably, the accident gave rise to numerous claims. To appreciate the

1

full scope of this dispute, it is necessary to look back to the origination of the business relationships that set the LA CONCHA on its way.

Two United States citizens, Chuck Newlin ("Newlin") and John Demere ("Demere"), formed the Mexican corporation, Dragados. In 2007, Dragados entered into a contract to perform dredging work in Cancun. Dragados ultimately secured a $2 million loan from Branch Banking & Trust ("BB&T") to finance the Cancun operation.[1] Demere personally guaranteed the loan, and offered his home as collateral. As a condition on the financing, BB&T allegedly required that it be named as a loss payee on any insurance policies for the LA CONCHA.

Dragados hired Brennan & Co., LLC ("Brennan")[2] to help secure insurance on the LA CONCHA. Brennan, in turn, contacted Bowood Partners, Ltd., a Lloyd's of London Broker. Bowood Partners, Ltd., solicited quotes from various insurers, and ultimately British Marine Insurance Co. ("British Marine")[3] agreed to insure the LA CONCHA.

---

[1] In order to secure financing, Dragados employed Prime Ocean Marine, LLC ("Prime Ocean") to obtain the loan. Prime Ocean is a U.S. entity based in Savannah, Georgia.

[2] Brennan is a U.S. company, based in Savannah, Georgia.

[3] There is some indication that British Marine Insurance Co. is now fully operated by QBE Insurance Ltd. For simplicity's sake, the Court will refer to the Defendant as British Marine throughout this Order, as it has done in this and related actions before the Court.

2

British Marine issued a marine hull insurance policy on the LA CONCHA for $5 million ("Policy"). The Policy contained a choice of law provision, stating that the "policy shall be governed and construed in accordance with Mexican law." Deep Sea Financing, LLC. v. British Marine Luxembourg, S.A., No. 4-09cv022 (S.D. Ga.) [hereinafter "DSFI"], Dkt. No. 30, Ex. A. Although BB&T allegedly required that it be named as a loss payee on any LA CONCHA insurance policy, the British Marine Policy does not explicitly list BB&T as a loss payee. However, British Marine did issue a certificate of insurance designating BB&T as a loss payee. DSFI, Dkt. No. 71, Ex. 2.

The LA CONCHA accident gave rise to several claims under the Policy. British Marine honored some claims, paying proceeds to Dragados directly as well as to third parties. British Marine allegedly paid over one half million dollars to Dragados.

In April 2008, Newlin and Demere's relationship soured, and Dragados fell apart. Newlin allegedly shut Demere out of Dragados and refused to repay the BB&T loan. Notably, Demere had personally guaranteed the BB&T loan, offering his home as security. Demere then formed Deep Sea Financing, LLC ("Deep Sea"). Deep Sea purchased BB&T's alleged loss payee rights to the British Marine Policy. Deep Sea then sought to recover the Policy proceeds as assignee of a loss payee. British Marine did not respond to Deep Sea's demands for the proceeds. Deep Sea

3

then initiated litigation against British Marine to enforce the alleged loss payee rights and assignment.

**PROCEDURAL BACKGROUND**

Deep Sea is now involved in three suits with British Marine in this Court. The first suit, DSFI, seeks recovery of insurance proceeds already paid by British Marine. The second suit, 4-10cv219, the instant suit, seeks recovery of any future insurance proceeds. The third suit, <u>British Marine Luxembourg, S.A. v. Deep Sea Financing, LLC</u>, No. 4-10cv023 (S.D. Ga.) [hereinafter, "Interpleader Action"], is an interpleader action brought by British Marine against Deep Sea and Dragados.

Although DSFI and the instant suit are quite similar, DSFI has advanced further than this suit. DSFI was initiated in the Superior Court for Chatham County, Georgia on December 15, 2008, and was removed to this Court on January 30, 2009. The instant case was initiated in the State Court for Chatham County, Georgia on August 8, 2010, and removed to this Court on September 9, 2010. British Marine has already filed two motions for summary judgment in DSFI and the Court has ruled on both. See DSFI, Def.'s Mot. Summ. J. Dkt. No. 30, Order Dkt. No. 123; DSFI, Def.'s Second Mot. Summ. J. Dkt. No. 130, Order Dkt. No. 181.

The Court issued its first summary judgment in DSFI on March 13, 2010. The March 13, 2010 order held that Deep Sea was

precluded from asserting a claim under Georgia's bad faith statute, O.C.G.A. § 33-4-6. The Court noted that choice of law provisions in marine insurance policies are generally enforced unless the party contesting enforcement can show that enforcement would be unreasonable or unjust. The Policy issued by British Marine contained a choice of law provision calling for application of Mexican law to disputes arising from the contract. The Court found that Deep Sea was unable to show that enforcement of the choice of law provision in the British Marine Policy would be unreasonable or unjust. The Court held that the Policy's choice of law provision should be enforced, and as such, no claim could be brought under Georgia's bad faith statute. Accordingly, the Court held that British Marine was entitled to summary judgment on Deep Sea's Georgia bad faith claim.[4]

On March 24, 2011, the Court denied British Marine's second motion for summary judgment. DSFI, Dkt. No. 181. In that order, the Court addressed British Marine's arguments that (1) the Policy was void because Dragados had failed to advise British Marine of the true valuation of the LA CONCHA, (2) Deep Sea had no rights as an assignee of a loss payee, and (3) even

---

[4] In conjunction with its ruling, the Court was required to determine whether the insurance policy was itself a nullity under Mexican law. The Court concluded that the policy was not a nullity, and that obligations British Marine took on in good faith are enforceable by Deep Sea, at least to the extent that Deep Sea can ultimately show a valid assignment of loss payee rights from BB&T. DSFI, Dkt. No. 123, at 12.

if BB&T was a loss payee, the Policy prohibited assignment of loss payee rights. British Marine's first argument - that the Policy was void - was based on the proposition that Dragados drastically overstated the value of the LA CONCHA when it secured the Policy. The Court concluded that a genuine issue of material fact exists with regards to the correct valuation of the dredge and consequently whether Deep Sea breached a duty to disclose the valuation. British Marine's second argument - that Deep Sea could not assert rights as an assignee of a loss payee - was also rejected by the Court. The Court held British Marine had not established as a matter of law that BB&T was not a loss payee. The Court's conclusion hinged on whether Brennan had the authority to designate or certify a loss payee and, if so, whether Brennan actually took the necessary steps to designate BB&T as a loss payee. Finally, the Court concluded that British Marine had not provided any authority for its position that the Policy precluded assignment. Accordingly, the Court denied British Marine's second motion for summary judgment.

British Marine has moved for reconsideration of the March 24, 2011 order. DSFI, Dkt. No. 182. Discovery has been reopened in that case. DSFI, Dkt. No. 197. The Court has not yet ruled on the DSFI motion for reconsideration.

The third suit before this Court involving these parties is the Interpleader Action. British Marine initiated the

6
AO 72A
(Rev. 8/82)

Interpleader Action after DSFI was underway, but before the present suit commenced. Interpleader Action, Dkt. No. 1. At the time it initiated the suit, British Marine rightly understood DSFI to involve Dragados and Deep Sea's competing interests to the Policy proceeds. British Marine named Dragados and Deep Sea as defendants in the Interpleader Action. Deep Sea asserted a cross-claim against Dragados in the Interpleader Action. Interpleader Action, Dkt. No. 64. However, as DSFI developed, British Marine changed its perspective, and began to argue that the entire Policy was void for a number of reasons. British Marine then moved to voluntarily dismiss the Interpleader Action and that motion was granted. Interpleader Action, Dkt. Nos. 113, 122. Despite the dismissal, the Interpleader Action remains open, for Deep Sea's cross claim against Dragados remains pending. Interpleader Action, Dkt. No. 127.

Having set forth the complicated facts surrounding the voyage of the LA CONCHA and the cases filed in its wake, the Court addresses the present motion for summary judgment.

**DISCUSSION**

The Court begins by noting that British Marine asserts the same arguments in the instant motion that it did in its summary judgment motions in DSFI. Specifically, British Marine argues

that O.C.G.A. § 33-4-6 does not apply, the choice of law provision requires application of Mexican law, and bad faith claims based on Georgia law are unsustainable. British Marine further argues that the Policy is void because of Dragados's breach of *uberrimae fidei*, due to the failure to disclose the correct value of the dredge. British Marine also argues that Deep Sea has no rights by way of assignment from a loss payee.

Because British Marine has offered no new arguments in the instant motion, the Court is compelled to reach the same conclusions it did in the DSFI orders. The differences in DSFI and the present case are not such as to justify a contrary result.[5]

As such, British Marine's motion is granted with regards to its argument that Deep Sea is precluded from recovering for bad faith under O.C.G.A. § 33-4-6 for the same reasons stated in the Court's March 13, 2010 order in DSFI. See DSFI, Dkt. No. 123. British Marine's motion is denied with regards to its argument that the contract is void for violation of the duty of good faith. As the Court stated in its March 24, 2011 order, there remains a question of fact regarding the actual value of the dredge. See Dkt. No. 181. Likewise, British Marine's motion is denied as to the claim that Deep Sea has no claim as an assignee

---

[5] The Court notes for the sake of clarity that the only difference between the suits appears to be that DSFI seeks proceeds already paid out, while the instant suit seeks proceeds yet to be paid.

of a loss payee. There remains a question of fact as to Brennan's authority to designate a loss payee, and British Marine has not shown clearly that the Policy precludes the assignment of loss payee rights. Therefore, British Marine's motion for summary judgment is granted in part and denied in part.

The Court also concludes that the three actions: this suit, DSFI, and the Interpleader Action involve common issues of law and fact. Moreover, if these actions proceed to trial, significant efficiencies will be gained by consolidating the three actions.[6] No confusion or prejudice is likely to result upon consolidation. Accordingly, the Court orders these cases consolidated into one action. See Fed. R. Civ. P. 42 (permitting consolidation of actions where actions involve a common question of law or fact).

This order serves notice on the parties to provide any briefing on why the three actions should not be consolidated. The parties have thirty (30) days to submit arguments in opposition to consolidation. The parties should submit briefing on the issue of consolidation, to the extent any is forthcoming, in this civil action.

---

[6] The Court notes that British Marine has argued that Dragados is a necessary party to this suit and to DSFI. Dkt. No. 30; DSFI, Dkt. No. 130. Upon consolidation of the three actions, Dragados will become a party in a single action encompassing this suit and DSFI. As such, British Marine's request that Dragados be added as a necessary party will be moot. Therefore, the Court defers addressing the matter until consolidation is resolved.

AO 72A
(Rev. 8/82)

The Court further recognizes that British Marine has sought reconsideration of the Court's March 24, 2011 Order in DSFI. Because British Marine may seek to reurge its reconsideration arguments in response to this Order, the Court will grant the parties additional time to seek reconsideration of this Order once the suits are consolidated.

**CONCLUSION**

For the reasons state above, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. The parties are ordered to provide the Court with additional briefing regarding any opposition to consolidation of this action, 4-09cv022, and the Interpleader Action within thirty (30) days of today's date.

**SO ORDERED**, this 29th day of March, 2012.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA