# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙
# 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕾𝖔𝖚𝖙𝖍𝖊𝖗𝖓 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕲𝖊𝖔𝖗𝖌𝖎𝖆
# 𝕾𝖆𝖛𝖆𝖓𝖓𝖆𝖍 𝕯𝖎𝖛𝖎𝖘𝖎𝖔𝖓

| | | |
|---|---|---|
| DEEP SEA FINANCING, LLC, | * | |
| Plaintiff, | * | |
| vs. | * | CV 410-219 |
| QBE INSURANCE, LTD. d/b/a BRITISH MARINE INSURANCE, CO, | * | |
| Defendant. | * | |

**ORDER**

Presently before the Court are two motions. The first is an Objection to consolidation filed by QBE Insurance ("British Marine").[1] See Dkt. No. 49. The second is a Motion for Reconsideration also filed by British Marine. See Dkt. No. 51. For the reasons stated below, both motions are **GRANTED**.

**BACKGROUND**

**FACTUAL BACKGROUND**

This dispute arises from the wreck of the LA CONCHA. The LA CONCHA, a dredge owned by Dragados Mundiales del Caribe S.A. de C.V. ("Dragados"), ran aground on a coral reef on June 5,

---

[1] There is some indication that British Marine Insurance Co. is now fully operated by QBE Insurance Ltd. For simplicity's sake, the Court will refer to the Defendant as British Marine throughout this Order, as it has done in this and related actions before the Court.

1

2007. The ship was on its way from Puerto Morelos, Mexico to a project in Cancun when the accident occurred. Understandably, the accident gave rise to numerous claims. To appreciate the full scope of this dispute, it is necessary to look back to the origination of the business relationships that set the LA CONCHA on its way.

Two United States citizens, Chuck Newlin ("Newlin") and John Demere ("Demere"), formed the Mexican corporation, Dragados. In 2007, Dragados entered into a contract to perform dredging work in Cancun. Dragados ultimately secured a $2 million loan from Branch Banking & Trust ("BB&T") to finance the Cancun operation.[2] Demere personally guaranteed the loan, and offered his home as collateral. As a condition on the financing, BB&T allegedly required that it be named as a loss payee on any insurance policies for the LA CONCHA.

Dragados hired Brennan & Co., LLC ("Brennan")[3] to help secure insurance on the LA CONCHA. Brennan, in turn, contacted Bowood Partners, Ltd., a Lloyd's of London Broker. Bowood Partners, Ltd., solicited quotes from various insurers, and ultimately British Marine Insurance Co. ("British Marine") agreed to insure the LA CONCHA.

---

[2] In order to secure financing, Dragados employed Prime Ocean Marine, LLC ("Prime Ocean") to obtain the loan. Prime Ocean is a U.S. entity based in Savannah, Georgia with Demere as its sole member and employee. See Dkt. No. 38, ¶ 16.

[3] Brennan is a U.S. company, based in Savannah, Georgia.

2

British Marine issued a marine hull insurance policy on the LA CONCHA for $5 million ("Policy"). Although BB&T allegedly required that it be named as a loss payee on any LA CONCHA insurance policy, the British Marine Policy does not explicitly list BB&T as a loss payee. However, British Marine did issue a certificate of insurance designating BB&T as a loss payee. DS I, Dkt. No. 71, Ex. 2.

The LA CONCHA accident gave rise to several claims under the Policy. British Marine honored some claims, paying proceeds to Dragados directly as well as to third parties. British Marine allegedly paid over one half million dollars to Dragados.

In April 2008, Newlin and Demere's relationship soured, and Dragados fell apart. Newlin allegedly shut Demere out of Dragados and refused to repay the BB&T loan. Notably, Demere had personally guaranteed the BB&T loan, offering his home as security. Demere then formed Deep Sea Financing, LLC ("Deep Sea"). Deep Sea purchased BB&T's alleged loss payee rights to the British Marine Policy. Deep Sea then sought to recover the Policy proceeds as assignee of a loss payee. British Marine did not respond to Deep Sea's demands for the proceeds. Deep Sea then initiated litigation against British Marine to enforce the alleged loss payee rights and assignment.

AO 72A
(Rev. 8/82)

**PROCEDURAL BACKGROUND**

Deep Sea is now involved in three suits with British Marine in this Court. The first suit, 4:09cv022 ("DS I"), seeks recovery of insurance proceeds already paid by British Marine. The second suit, 4-10cv219 ("DS II"), the instant suit, seeks recovery of any future insurance proceeds. The third suit, 4-10cv023 ("Interpleader Action"), was originally an interpleader action brought by British Marine against Deep Sea and Dragados. British Marine dismissed its claim, so all that remains of the Interpleader Action is a cross-claim filed by Deep Sea against Dragados.

For purposes of this Order, an important distinction between DS I and DS II is procedural. In its answer in DS I, British Marine raised five defenses. See DS I, Dkt. No. 5. However, later in the litigation British Marine sought to amend its answer to include additional defenses, namely the defense of *uberimae fidei*, a defense that will be discussed in depth below and that is unique to marine insurance contracts. See DS I, Dkt. No. 83. British Marine's Motion to Amend its Answer, however, was denied. See DS I, Dkt. No. 113. Thus, in DS I, British Marine, for procedural reasons, whether British Marine has a defense based on *uberimae fidei* is disputed. See DSI, Dkt. No. 164. This, however, is not the case for DS II. British Marine raised *uberimae fidei*, along with other defenses,

4

in its original answer and those defenses are, without dispute, properly before the Court in DS II. See Dkt. No. 9.

Within the three pending suits, there have already been three prior summary judgment orders. British Marine made two motions for summary judgment in DS I. See DS I, Dkt. Nos. 123, 181. British Marine filed a Motion for Summary Judgment in the present case, DS II, which this Court denied on March 29, 2012. See Dkt. No. 48. In that Order, the Court asked the parties to file any objections to consolidating the three pending suits. Dkt. No. 48. British Marine filed a Motion for Reconsideration asking this Court to specifically address two of the arguments presented in its Motion for Summary Judgment, namely *res judicata* and *uberimae fidei*. Dkt. No. 51. Both Deep Sea and British Marine objected to the consolidation of the Interpleader Action with DS I and II, although neither party objected to the consolidation of DS I with DS II. See Dkt. Nos. 49, 50.

## LEGAL STANDARD

"Reconsideration is appropriate only if [the moving party]: demonstrates: (1) an intervening change of law; (2) the availability of new evidence; and (3) the need to correct a clear error of law or prevent manifest injustice." Whitesell Corp. v. Electolux Home Prods., Inc., No. CV 103-050, 2010 WL 4025943, at *7 (S.D. Ga. Oct. 13, 2010). "In considering a motion for reconsideration, a court must balance the need for

finality and judicial economy against the need to render just decisions." Id. Motions for reconsideration "should not be used to relitigate issues which have already been found lacking." Id. "[R]econsideration of an earlier order is an extraordinary remedy, which should be granted sparingly." Id.

## DISCUSSION

### I. Claim Splitting

In its Motion for Reconsideration, British Marine asks that this Court specifically address its argument that DS II is barred by the doctrines of *res judicata* and claim-splitting. See Dkt. No. 51. British Marine's argument on this point is not the typical *res judicata* defense. Rather than asserting that Deep Sea should have brought suit for future claims in DS I and, because it did not, those claims are barred, British Marine argues that Deep Sea did in fact assert a claim for future payments in its Complaint in DS I. Thus, according to British Marine, DS II is entirely duplicative of DS I because both suits encompass claims for future payments under the Policy. In opposition, Deep Sea maintains that DS I and DS II are not the same because DS I concerns BB&T's rights as a loss payee to payments already made under the Policy, whereas DS II concerns BB&T's rights to future payments under the Policy.

This Court concludes that dismissal of DS II because of claim-splitting is unwarranted. DS I initially encompassed

claims for future insurance proceeds, but that issue evolved into a separate suit because of British Marine's own actions. After DS I was filed, British Marine filed the Interpleader Action seeking to determine, as between Deep Sea, as an assignee of a loss payee, and Dragados, as the named insured, who would have claim to future insurance proceeds. See Interpleader Action, Dkt. No. 1. After the suit proceeded, British Marine filed a Motion to Dismiss its own interpleader action, which this Court granted on May 14, 2010. Interpleader Action, Dkt. No. 122. Once the Interpleader Action was no longer pending, Deep Sea filed DS II on September 2, 2010 re-raising the issue of future insurance payments. DS II, Dkt. No. 1.

Claim splitting is not allowed "except where the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Davis v. Sun Oil Co., 148 F.3d 606, 612 (6th Cir. 1998) (citations omitted); see also RA Medical Sys., Inc. v. PhotoMedex, Inc., 372 F. App'x, 787 (9th Cir. 2010) ("[W]here a defendant acquiesces in the split, the rule [against claim splitting] should be inapplicable."); Super Van, Inc. v. City of San Antonio, 92 F.3d 366, 371 (5th Cir. 1996) ("[T]he Restatement recognizes that a second action may be brought by a plaintiff on the same cause of action if 'the parties have agreed in terms or

7

in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein.") (citations omitted).

Here, any claim splitting was initiated by British Marine itself by filing and later dismissing its claim in the Interpleader Action. As such, British Marine has acquiesced in the split and dismissal on the basis of claims splitting is not appropriate.

## II. *Uberimae Fidei*

This Court finds merit in British Marine's argument that Dragados breached its obligation of *uberimae fidei* by failing to disclose Newlin's background and the fact that, when Dragados sought insurance coverage, the LA CONCHA was under arrest in Texas as a result of a lawsuit concerning its ownership.

As an initial matter, this Court must determine the governing body of law for British Marine's defense of *uberimae fidei*. This Court has previously held that, pursuant to a valid choice of law provision, Mexican law governs the Policy. DS I, Dkt. No. 123. However, choice of law provisions do not apply to contract formation issues, such a fraud, duress, and fraudulent inducement. See Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609 (1st Cir. 1993); Ryder Truck Lines, Inc. v. Goren Equip. Co., Inc., 576 F. Supp. 1348, 1354 (N.D. Ga. 1983). Thus, Mexican law does not govern this issue. If Mexican law does not govern, then federal admiralty

8

law must apply, as the body of law applicable to marine insurance contracts. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310 (1955).

*Uberrimae fidei* is a well-settled federal admiralty law concept applicable to marine insurance that requires the "utmost good faith" of a party seeking insurance. See HIH Marine Srvs., Inc. v. Fraser, 211 F.3d 1359, 1362 (11th Cir. 2000). "*Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." Id. "The duty to disclose extends to those material facts not directly inquired into by the insurer." HIH Marine Srvs., Inc. v. Fraser, 211 F.3d 1359, 1362 (11th Cir. 2000); Cigna Property & Cas. Ins., Co. v. Polaris Pictures Corp., 159 F.3d 412, 420 (9th Cir. 1998) ("Whether or not asked, an applicant for marine insurance is bound to reveal every fact within his knowledge that is material to the risk."). If the applicant fails to reveal material information on an application for marine insurance, the Policy is void *ab initio*. Steelmet, Inc. v. Caribe Towing Corp., 747 F.2d 689, 695 (11th Cir. 1984). Any material misrepresentation, even if it is the result of "mistake, accident or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void." Id. "The central principle of uberrimae fidei . . . is that the *insured* bears the burden of full and voluntary

disclosure of facts material to the decision to insure." HIH Marine Srvs., 211 F.3d at 1363.

"This duty to disclose is based on the rationale that requiring the marine insurer to investigate each and every claim made by those applying for coverage would be both time consuming and expensive." Id. (citations omitted). "Instead the law has placed the burden of good faith disclosure with the person in the best position to know all the facts; the insured." Id. The insurer does not have an obligation to investigate. Id. (holding that insurer did not have an obligation to request a copy of a chartering agreement).

Information "is material if it might have a bearing on the risk to be assumed by the insurer." Id. (citations omitted). Information has a bearing on the risk if it "could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." Kilpatrick Marine Piling v. Fireman's Fund Ins. Co., 795 F.2d 940, 942-43 (11th Cir. 1986). "[M]ateriality in the marine insurance context is broadly defined as anything that could influence the insurer's evaluation of the risk presented by the insured." HIH Marine Srvs., 211 F.3d at 1364.

British Marine has asserted three ways it contends that Dragados, the insured, breached its *uberrimae fidei* duties. See Dkt. No. 51. First, British Marine argues Dragados selectively

10

revealed only one valuation of LA CONCHA, and withheld other valuations and surveys which listed a lower value. Second, British Marine alleges Dragados concealed Newlin's criminal background and the fact that Demere, a fifty percent owner of Dragados, had accused Newlin, his co-owner, of various types of fraud in a federal action filed prior to the insurance issued. Third, British Marine contends Dragados failed to disclose information concerning the ownership of LA CONCHA, in that Dragados did not inform British Marine that, at the time it sought insurance, LA CONCHA was under arrest in Texas by a company claiming to be its owner. This Court finds merit in British Marine's arguments concerning the second two categories of information, and therefore will not address the first.

This court concludes that Demere, acting on behalf of Dragados, violated the duty of *uberrimae fidei* by failing to disclose that Demere had filed suit against Newlin on June 9, 2005 in this Court alleging that Newlin had "employed devices, schemes, and artifices to defraud [Demere] by making materially false statements" and "making knowingly false promises" as well as committing securities fraud. Demere v. Newlin, 4:05cv00091-WTM-GRS, Dkt. No. 1. This Court finds that such information is material because it "*could possibly* influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." Kilpatrick Marine Piling, 795 F.2d at 942-43

11

(emphasis added). That a fifty-percent owner of Dragados had, only a few years previously, filed suit in federal court against his co-owner, a convicted felon,[4] alleging several types of fraud would give any reasonable insurer pause before issuing an insurance policy. "[M]ateriality in the marine insurance context is broadly defined as anything that *could* influence the insurer's evaluation of the risk presented by the insured." HIH Marine Srvs., 211 F.3d at 1364 (emphasis added). British Marine has also presented testimony of its underwriter, Peter Lagna, that British Marine would not have underwritten the Policy had it known of the concealed information. Lagna Dep. 114-118; see also Northfield Ins. Co. v. Barlow, 983 F. Supp. 1376, 1384 (N.D. Fla. 1997) (concluding information was material based on an affidavit of insurer's employee that the insurer would not have issued the same policy had it know of the information).

Courts have determined that withholding similar information violated the duty of utmost good faith. In Jackson v. Leads Diamond Corp., the failure of the insured diamond merchant's sole shareholder to disclose on the insurance application prior convictions for jewelry theft voided the policy *ab initio*, even though the application contained no questions concerning

---

[4] It is undisputed that Demere knew that Newlin had a criminal record, however Demere did not know the details concerning Newlin's criminal conviction at the time of the insurance application. Dkt. No. 37, Ex. 4, ¶ 8.

12

criminal records of any insured. 767 F. Supp. 268 (S.D. Fla. 1991). Although Jackson dealt with a jeweler's block policy, the court stated that such a policy is considered under the same standards as a marine insurance contract and the duty of *uberrimae fidei* applied equally to the policy at issue. Id. at 271. Likewise, in Alko Jewelry Mfg. Corp. v. Lloyd's of London, the Ninth Circuit concluded that failing to disclose that the insured's principal shareholder had been indicted for insurance fraud violated the duty of utmost good faith under marine insurance principles. 988 F.2d 117 (9th Cir. 1993) (unpublished table opinion).

That the civil "case was settled to Mr. Demere's satisfaction" and Demere and Newlin had temporarily made amends does not alter this conclusion. Dkt. No. 38, ¶ 39; see also Dkt. No. 37, Ex. 4, ¶ 8. *Uberrimae fidei* does not allow the insurance applicant to unilaterally determine what is material. An applicant is under a duty to disclose any material fact "however slight and immaterial it may . . . seem[] to" the applicant himself. Sun Mut. Ins. Co. v. Ocean Ins. Co., 107 U.S. 485, 510 (1883) (citation omitted); see also Gulfstream Cargo, Ltd. v. Reliance, Ins. Co., 409 F. 2d 974, 980-981 (5th Cir. 1969) ("[T]he same rule obtains, even though the insured did not suppose the fact to be material."). In fact, an insured is required to disclose information even if, in his opinion, the

13

information reduces the amount of risk. See HIH Marine Srvs., 211 F.3d at 1364 (finding that insured's opinion that the boat was actually "at less risk" than what was represented on application was "simply irrelevant to the materiality analysis.").

Deep Sea asserts that Newlin's history "bore no relationship to the risk Defendant was asked to insure." Dkt. No. 38, ¶ 39. Certainly, this information would not affect the chances that LA CONCHA would run into a reef, but that is not to say it was immaterial. This information increased British Marine's risk on the contract itself, because it would affect a reasonable insurer's calculus regarding the risk of fraudulent claims. Courts have found violations of the duty of *uberrimae fidei* when the information did not affect the chances of a loss but affected the overall nature of the contract. See Washington Int'l Ins. Co. v. Mellone, 773 F. Supp. 198, 191-92 (C.D. Cal. 1990) (failure to disclose that vessel was owned by partnership violated duty of utmost good faith under California law).

Furthermore, Demere was still obligated to disclose this information even though the suit was a matter of public record. Even when the information could have been discovered by the insurer, the insured must disclose the information because the insurer is under no duty to conduct research. See HIH Marine Servs., 211 F.3d at 1363-64 (concluding that, under *uberrmae*

14

*fidei*, marine insurer was not responsible for requesting copy of charter agreement or seeking information about chartering operation). To discharge his *uberimae fidei* obligations an applicant must reveal information even if that information is a matter of public record. See Jackson, 767 F. Supp. at 271 (insured had to disclose prior convictions for jeweler thefts under duty of utmost good faith); Axis Reinsurnace Co. v. Henley, No. 4:08cv168-WCS, 2009 WL 3416248 at *2 (N.D. Fla. 2009) (marine insurance policy voided for insured's failure to disclose information that was available on the insured's website). Indeed, the Ninth Circuit has held that an insured violated his duty of utmost good faith when he misrepresented his prior loss record on an application, even though he previously disclosed this information to the same insurer in a prior application. Certain Underwriter's at Lloyd's v. Montford, 52 F.3d 219, 222 (9th Cir. 1995). Whether the insurer had "constructive knowledge" of information in its own files had no effect on the insured's duty. Id.

Dragados also violated its duty of *uberrimae fidei* by failing to disclose that LA CONCHA was under arrest in Texas when it sought insurance. Gulf Coast, a Texas Limited Liability Corporation, had filed a suit in the District Court for the Southern District of Texas claiming an ownership interest in LA CONCHA and attaching the vessel. Dkt. No. 29, ¶¶ 12, 41-43.

15

Gulf Coast had paid the $300,000 purchase price for the vessel. See Dkt. No. 38, ¶ 35.

On April 11, 2007, when the insurance application was presented to and accepted by British Marine, LA CONCHA was under arrest in Texas pursuant to the lawsuit. See Dkt. No. 38, ¶ 41. A hearing, however, had been set for April 16, 2007 to determine the amount of bond so that LA CONCHA could be released. Dkt. No. 38, ¶ 41. Demere testified at the bond hearing as a witness on behalf of Newlin. Dkt. No. 38, ¶ 43. Bond was set at approximately $750,000, which Dragados paid. Dkt. No. 38, ¶ 47. LA CONCHA was then released on bond. Dkt. No. 38, ¶ 47. The suit proceeded and "[t]he district court issued an opinion on August 3, 2009, concluding that Gulf Coast had been deprived of its right to possession of the dredge." Gulf Coast Shell & Aggregate LP v. Newlin, 623 F.3d 235, 238 (5th Cir. 2010). This decision was eventually reversed on appeal by the Fifth Circuit, which concluded that there was no admiralty jurisdiction over the case. Id. at 237.

In applying for marine insurance, Dragados failed to inform British Marine that LA CONCHA was currently under arrest and that there was a pending lawsuit concerning its ownership. This Court finds that both those pieces of information were material, and therefore Dragados, as a marine insurance applicant, was required to disclose them.

16

Deep Sea argues that LA CONCHA's arrest was immaterial because, as of the time of the application, a hearing date for bond had already been set and Dragados was determined to pay for LA CONCHA's release. While the release on bond determined that Dragados had custody of LA CONCHA, it did not foreclose Gulf Coast's asserted ownership interest. In the *uberrimae fidei* context, courts have repeatedly held that facts relating to the ownership of the vessel are material. HIH Marine Servs., 211 F.3d at 1364 (stating that the insurer has "the right to assess the risk using accurate information on the identity of its insured"); Washington Int'l Ins. Co., 773 F. Supp. at 192 (identifying a part-owner is material to marine insurance risk). Demere's failure, when acting on behalf of Dragados, to disclose the facts and circumstances surrounding LA CONCHA's arrest in Texas breached Dragados's duty of utmost good faith.

The result of these material omissions is that the marine insurance policy at issue was void *ab initio*. HIH Marine Srvs., 211 F.3d at 1364 (if duty of *uberrimae fidei* is breached then policy is void *ab initio*). Accordingly, summary judgment is appropriate for DS II (4:10cv219), where the defense of *uberrimae fidei* was raised in British Marine's answer.

### III. Consolidation

This Court turns now to the issue of consolidation. As mentioned above, there are three related suits. DS I,

17

4:09cv022, concerns the recovery of insurance proceeds already paid by British Maine. See Dkt. No. 38 (describing the three Deep Sea suits). DS II, 4:10cv219, sought recovery of any future insurance proceeds; however, as a result of this Order, that action will no longer remain pending. Consolidation of DS I with DS II is therefore rendered moot. The cross-claim filed by Deep Sea against Dragados remains pending in the Interpleader Action, 4:09cv23.

In a rare instance of agreement, both Deep Sea and British Marine oppose the consolidation of DS I with the Interpleader Action. See Dkt. Nos. 49, 50, 52, 61. Since it is the wish of both parties, DS I and the Interpleader action will not be consolidated but will remain separate.

The result of not consolidating DS I and the Interpleader action is that this Court must now address British Marine's argument that Dragados is a necessary party to DS I. See DS I, Dkt. No. 1.

Federal Rule of Civil Procedure 19 governs the required joinder of parties. Under Rule 19(a)(1), a party is required if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>     (i) as a practical matter impair or impede the person's ability to protect the interest; or

18

>           (ii) leave an existing party subject to a
>      substantial risk of incurring double, multiple, or
>      otherwise inconsistent obligations because of the
>      interest.

The present case involves Rule 19(a)(1)(B)(ii); British Marine argues that without the named insured, Dragados, it faces the risk of double or otherwise inconsistent obligations. Deep Sea is asserting rights assigned to it by BB&T, a purported loss payee under the insurance contract. In a marine insurance contract, a loss payee "is a party designated to receive payment should the named insured prevail on its claim." Transamerica Leasing, Inc. v. Inst. of London Underwriters, 267 F.3d 1303, 1307 (11th Cir. 2001).

Given the specific claims pending in DS I, this Court concludes that British Marine cannot be subject to double obligations from both Dragados and Deep Sea, and therefore, Dragados is not a necessary party to DS I. DS I seeks recovery only for payments already made by British Marine either to Dragados or to third-parties, such as salvors, on Dragados's behalf. Deep Sea asserts BB&T's rights as a loss payee were violated because British Marine made these payments without BB&T's knowledge or approval. There is no risk that British Marine would also be obligated to Dragados on these payments because those payments were made either to Dragados or to third parties on Dragados's behalf. Dragados could seek no further

19

recovery for those past payments. Thus, in DS I, Dragados is not a necessary party because none of the pending claims in that action relate to future liabilities. See Dkt. No. 38, ¶ 1 (Deep Sea distinguishing DS I from DS II on the basis of whether the claims at issue had already been paid or not); Dkt. No. 40 (Deep Sea representing that DS I "addresses monies already paid by Defendant under the policy," whereas DS II addresses "additional monies to be paid out under the policy").

## CONCLUSION

For the reasons stated above, British Marine's Motion for Reconsideration is **GRANTED**. Dkt. No. 51. Based on the doctrine of *uberrimae fidei*, summary judgment in DS II is appropriate. The clerk is directed to enter the appropriate judgment and close case number 4:10cv219.

British Marine's unopposed Objection to Consolidation is **GRANTED**. Dkt. No. 49. DS I, 4:09cv022, will not be consolidated with the Interpleader Action, 4:09cv23; those cases will remain separate. Because Dragados is not a necessary party to DS I, it will not be added as a party to that suit.

**SO ORDERED**, this 28th day of March, 2013.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA